W. H. SHROYER v. CHICAGO, ROCK ISLAND & GULF RAILWAY COMPANY.

No. 3129. Decided December 6, 1920.

(226 S. W., 140.)

BY COMMISSION OF APPEALS.

1.—Carriers—Interstate Commerce—Limiting Time to Sue—Waiver.

In interstate transportation of live stock, where a reduced rate is based on a valid contract providing that the shipper must bring his suit within

six months, the carrier, being prohibited from discrimination between shippers, could not by agreement divest itself of the right, in a particular case, to insist on such provision of the contract, and hence could not be estopped from so doing by conduct leading the shipper to believe that such provision would not be insisted on. (Pp. 26, 27).

2.—Same—Interstate Commerce Commission—Filing Schedules of Rates.

In filing its schedules of rates with the Interstate Commerce Commission as required by statute (Interstate Commerce Law, Sec. 6, Comp. Stats. of U. S., 1916, sec. 8569) the carrier is required to file also any rules which affect such rate or the value of the service rendered. Where a schedule showing a reduced rate is based on the insertion in the contract of a provision that suit for damages must be brought by the shipper within six months from delivery the schedules so filed must show such condition affecting the reduced rate, or its insertion in the contract of shipment will be invalid and of no effect. (Pp. 27, 28).

By SUPREME COURT.

3.—Practice on Reversal.

The Court of Civil Appeals having reversed and remanded on finding error by the trial court, but without considering various other assignments of error by the appellant, some of these relating to questions on which its decision would be final, the Supreme Court, finding that the case had been erroneously reversed on the sole question considered, will not affirm the judgment of the trial court, but will remand to the Court of Civil Appeals for determination by them of the assignments of error on which they did not pass. (P. 29).

Error to the Court of Civil Appeals for the Seventh District, in an appeal from Potter County.

Shroyer sued the Chicago, R. I. & G. Ry. Co., and obtained judgment. Defendant's appeal therefrom resulted in a reversal and remand to the trial court (Chicago, R. I. & G. Ry. Co. v. Shroyer, 197 S. W., 773.) Shroyer having obtained writ of error, the case was by the Supreme Court transferred to the Commission of Appeals, Section B, where an opinion was pronounced reversing the ruling of the Court of Civil Appeals and recommending that the judgment of the trial court be affirmed. On motion for rehearing the Supreme Court approved the recommendation of the Commission with respect to reversal, but remand to the Court of Civil Appeals for consideration of questions involved in the appeal but not determined by its former judgment.

*W. A. Davidson* for plaintiff in error.

*N. H. Lassater* and *C. E. Gustavus* for appellee.

No briefs for either party were with the record which reached the Reporter.

KITTRELL, JUDGE, delivered the opinion of the Commission of Appeals.

Plaintiff in error sued defendant in error for damages arising out of an interstate shipment of cattle, and recovered judgment.

On appeal that judgment was reversed and the cause remanded by the Court of Civil Appeals of the Seventh District.

The report of the case is to be found in Vol. 197, S. W. Rep., page 773, and the carefully considered and able opinion of Chief Justice Huff clearly reveals what issues were involved, and the holding of the Court with relation thereto.

The question on the decision of which the opinion is in the main based was apparently raised on motion for rehearing for the first time. There were, however, several assignments of error presented, but the defense was based in the main on the ground that the plaintiff had not brought suit within six months after his cause of action accrued, as was required by the contract under which the shipment was made.

By way of avoidance of that defense plaintiff plead certain facts by way of estoppel, to the effect that the representatives of the railway company had by their statements and letters induced him to believe that the six months limitation would not be insisted on, but would be waived, and the Court of Civil Appeals without setting forth the evidence, treated it as sufficient to show waiver by estoppel.

We do not deal with the questions so ably discussed by the Court of Civil Appeals with the expectation of being able to add to, or improve upon its opinion; but since the memorandum of the Committee of Judges which granted the writ, shows that it was granted because of the great importance of the question involved, without any expression of opinion as to the correctness of the holding, additional observations on our part may be helpful to the bar and courts in similar cases which may arise in the future.

The Court of Appeals held that the six months limitation provision was valid, and that estoppel could not be interposed to prevent its application to the case as a defense. With that holding we fully agree.

To allow the force and effect of the limitation to be avoided on the ground of estoppel would be to allow that to be done indirectly which cannot be done directly.

One of the controlling purposes in enacting the Interstate Commerce Act originally, as well as the amendments thereto, was to prevent the evils arising out of discrimination between shippers on the part of carriers, which had grown to harmful proportions; therefore the right or power to discriminate between shippers in any matter relating to interstate shipments was taken away by the Federal

Statute, and no carrier can waive any requirement of the Statute or any stipulation of any contract made pursuant thereto.

If the representatives of a railroad company could by conversations and letters and negotiations extending beyond the statutory or contract limit of time to bring suit, set estoppel in operation so that the carrier could not assert and invoke the statutory right given it, which is part of the contract of shipment, their action would in effect amount to the equivalent of a waiver, and would operate to enable the carrier to discriminate between shippers, and thereby virtually nullify the Statute. Georgia F. & A. Ry. Co. v. Blish Milling Co., 241 U. S., 197, 60 L. Ed., 948,,36 Sup. Ct., 541 and authorities cited; Southern Ry. Co. v. Prescott, 240 U. S., 638, 60 L. Ed., 836, 36 Sup. Ct., 469; St. Louis, I. M. & S. Ry. Co. v. Landa & Storey, 187 S. W., 358.

The Interstate Commerce Act has been the subject of judicial decision by the court of ultimate resort in many cases, and the Carmack amendment has been repeatedly construed, interpreted, and applied.

It is clear beyond doubt or debate that the amendment has withdrawn the determination of the validity of all stipulations in interstate shipping contracts from State law or legislation. Adams Exp. Co. v. Croninger, 226 U. S., 491, 57 L. Ed., 314, 44 L. R. A. (N. S.), 257, 33 Sup. Ct., 148; Michigan C. R. Co. v. Freeland, 227 U. S., 59, Ann. Cas. 1914C., 176, 57 L. Ed., 417, 33 Sup. Ct., 192.

No discrimination will be permitted directly or indirectly as between shippers.

The limitation of the time within which to bring actions is a usual and reasonable provision, and nothing in the Carmack amendment is violated by such agreement.

The question of the construction of an interstate bill of lading is a Federal question. Every shipper is charged with notice of the terms of the interstate tariffs governing his shipments.

If any State law or the holding of any State court conflicts with the provisions of the Federal Statute, or with the interpretation put upon it by the Supreme Court of the United States, the Federal law will control. (Authorities *supra*) Missouri K. & T., Ry. Co. v. Harriman, 227 U. S., 657, 57 L. Ed., 690, 33 Sup. Ct., 397; Western Transit Co. v. Leslie & Co., 242 U. S., 448, 61 L. Ed., 423, 37 Sup. Ct., 133; Southern Ry. Co. v. Prescott, 240 U. S., 632, 60 L. Ed., 836, 36 Sup. Ct., 469.

The appellee, plaintiff in error here, stated in his motion for rehearing in the Court of Civil Appeals that it was not disputed by him that the court's holding that the stipulation could not be waived was correct, if the stipulation was enforcible in the first place; but contended that it was not valid, but was void because it was not a part of the schedule filed with the Interstate Commerce Commission. On the other hand, appellant, defendant in error here, contends that

the stipulation as to bringing suit in six months was not required to be filed.

The contentions of opposing counsel revolve around this single point.

The question is one concerning which lawyers and courts may reasonably differ. While Chief Justice Huff discusses it with persuasive force, yet he admits it is not free from difficulty and doubt by saying:

"The presentation of the question upon motion for rehearing by appellee has been forceful and it appears to us may be in reasonable interpretation of the statute; but after examining quite a number of cases by the Supreme Court we find no case passing upon provisions of like kind that will justify us in reaching the conclusion that that court has ever placed its holding as to the validity of such limitations in bills of lading upon the ground that such provision must first be filed with the Interstate Commerce Commission as part of the carriers rate sheet."

The Supreme Court has indicated to us that the stipulation in the bill fixing the short period of six months for the institution of the suit was clearly a determinative element of the rate charged the shipper; indeed, was in a chief measure the consideration, the justification for the rate. That the statute declares that any regulation which in anywise affects or determines the rate shall be filed with the Interstate Commerce Commission as a part of the carriers schedule of rates. The purpose of this must have been to acquaint the shipper with any rule or regulation having the character of a determinative factor in the making of the rate, and by which, because of this the shipper would be bound if he accepted the rate. In fairness, he would be entitled to that knowledge so as to enable him to choose properly between the higher and the lower rate, and it should therefore be assumed that the intention of the statute was to afford it to him.

The ultimate decision of the question rests with the United States Supreme Court, but it has not yet determined it.

Upon this view of the question the holding is based that the stipulation was a regulation affecting the rate within the meaning of the Federal Statute.

This being true, it was not binding on plaintiff in error under the admitted facts, and the Court of Civil Appeals erred in holding to the contrary.

The proper judgment to be rendered is to reverse the judgment of the Court of Civil Appeals and affirm the judgment of the District Court, and we so recommend.

Opinion filed June 23, 1920.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its original opinion. We likewise adhere to our judgment reversing the judgment of the Court of Civil Appeals. It was improper, however, to affirm the judgment of the District Court, as originally recommended by the Commission of Appeals. In this respect the motion for re-hearing is granted, and the case will be remanded to the Court of Civil Appeals for its consideration of the questions presented there by the appellant railway company not determined by our approval of the holding of the Commission of Appeals. A number of those questions are within the exclusive jurisdiction of the Court of Civil Appeals. It pretermitted consideration of assignments other than those raising the one question upon which it reversed the judgment for the plaintiff in the trial court. Our reversal of its holding on that question should not preclude its determination of these other assignments.

Opinion delivered December 1, 1920.

*Reversed and remanded to Court of Civil Appeals.*